1  SIDNEY J. COHEN, Esq. State Bar No. 39023
   SIDNEY J. COHEN PROFESSIONAL CORPORATION
2  427 Grand Avenue
   Oakland, CA 94610
3  Telephone: (510) 893-6682

4  Attorneys for Plaintiff
   Richard Skaff

5

6  JEFFREY A. WALTER, CBN 63626
   JOHN A. ABACI, CBN 166493
7  WALTER & PISTOLE
   670 West Napa Street, Suite "F"
8  Sonoma, CA 95476
   Telephone: (707) 996-9690
9  Fax: (707) 996-9603

10 Attorneys for Defendant
   Town of Corte Madera

11

12

13                    UNITED STATES DISTRICT COURT

14               NORTHERN DISTRICT OF  CALIFORNIA

15

16 RICHARD SKAFF,                      **CASE NO. C 08-05407 SBA**

17          Plaintiff,                 **CONSENT DECREE AND ORDER**

18     vs.

19 CITY OF CORTE MADERA, and DOES 1-
   20, Inclusive,
20
            Defendants.
21 _____/

22 **I.    RECITALS**

23        A.    Plaintiff RICHARD SKAFF ("Plaintiff") asserts that he is a person with a disability

24 who uses a wheelchair for locomotion and alleges that he is unable to use portions of public

25 facilities which are not accessible to disabled persons who use wheelchairs.  Defendant, TOWN

26 OF CORTE MADERA ("Town" or "Defendant"), is a general law city organized and existing

27 under the laws of the State of California.

28        B.    Plaintiff filed this action on December 2, 2008, alleging violations of the Americans

1   with Disabilities Act of 1990 ("ADA"), 42 U.S.C. Sections 12101 et seq., and California civil

2   rights laws against Defendant.  Plaintiff has alleged that Defendant has violated Title II of the

3   ADA, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 1254(1), ("Section 504"),

4   Sections 54, 54.3 and 55 of the California Civil Code, Sections 4450 et seq. of the California

5   Government Code, Sections 19955ff, et seq. (including Section 19959) of the California Health

6   and Safety Code, Title 24 of the California Code of Regulations regulating disabled access

7   construction standards, and all related Codes and Regulations with respect to curbs, sidewalks,

8   walkways, paths of travel, parking, and related facilities located within the Defendant's public

9   rights-of-way and on property owned by the Defendant throughout the Town of Corte Madera

10  (hereafter collectively referred to as "subject matter areas of this lawsuit").  Plaintiff has sought by

11  this action injunctive relief to modify these areas by removing all barriers so that each provide full

12  and equal access to the Plaintiff and all citizens, including persons with disabilities, and are in

13  compliance with all federal and state disabled access laws and regulations for persons who have

14  mobility disabilities such as the Plaintiff.  Plaintiff has also sought by this action injunctive relief to

15  compel Defendant to develop and implement and/or timely adhere to any existing Self-Evaluation

16  and Transition Plan for removal of barriers to access, in accordance with ADA regulations.

17       C.   Plaintiff's allegations of the violations that have been committed by Defendant

18  specifically include the following acts or omissions: 1) Plaintiff has alleged that the Defendant has

19  performed alterations, structural repairs or additions within the subject matter areas of this lawsuit

20  since November 1, 1968 in violation of state disabled access requirements of Government Code

21  Section 4456 and Health & Safety Code Section 19959 and applicable disabled access statutory

22  and regulatory standards, and since January 26, 1992 has performed alterations, structural repairs

23  or additions within the subject matter areas of this lawsuit in violation of applicable ADA

24  standards, including 28 C.F.R. 35.151(b) and 28 C.F.R. 35.151(e); 2) Plaintiff has alleged that the

25  Defendant has failed on an ongoing basis to provide program access to persons with disabilities to

26  the streets, sidewalks, curbs, exterior walkways, paths, trails, and parking within the subject matter

27  areas of this lawsuit in violation of ADA regulations, including 28 C.F.R. 35.150(a); 3) Plaintiff

28  has alleged that the Defendant has failed on an ongoing basis to provide maintenance of facilities,

**CONSENT DECREE AND ORDER**
**CASE NO. C08-05407 SBA**                                                    2

1  including but not limited to roads, walks, passageways, and parking in the subject matter areas of

2  this lawsuit, required to be accessible under the ADA in violation of 28 C.F.R. 35.133; 4) Plaintiff

3  has alleged that the Defendant has failed on an ongoing basis to maintain accessibility for

4  temporary facilities in the subject matter areas of this lawsuit, including but not limited to

5  temporary safe pedestrian passageways around a construction site, in violation of 28 C.F.R. 36

6  APP.A.4.11(4) to Title III of the ADA; and 5) Plaintiff has alleged that Defendant has since the

7  date of enactment of the ADA failed to adopt a legally sufficient Transition Plan and Self-

8  Evaluation Plan or has failed to comply with its Transition Plan and Self-Evaluation Plan, in

9  violation of 28 C.F.R. 35.150(d) and 35.105.

10      D.   Plaintiff has also alleged that as a result of the violations described above he has

11  encountered barriers within the subject matter areas of this lawsuit and been deterred from using

12  the subject matter areas of this lawsuit on an ongoing basis for many years and specifically within

13  the six-month period preceding the filing of this lawsuit.  Plaintiff has sought by this lawsuit to

14  recover damages for physical and personal injuries and discriminatory experiences arising out of

15  Defendant's alleged failures and has sought to recover reasonable attorney's fees, expenses, and

16  costs incurred in the preparation and litigation of this lawsuit.

17      E.   Defendant asserts that it has provided program access and physical access to persons

18  with disabilities within the subject matter areas of this lawsuit on a continuing basis for all relevant

19  times.  Defendant asserts that it is a municipal corporation having a population of approximately

20  9500 people and a limited number of staff.  Defendant asserts that it is currently experiencing a

21  substantial operating budget shortfall arising out of the ongoing, deep economic recession that has

22  heavily affected state and local government revenue sources.  Defendant asserts that it has taken

23  such measures as reducing its staff and work hours to compensate for receiving significantly lower

24  revenues during this recessionary period.  Defendant asserts that the relief sought by the Plaintiff in

25  this Action, if ordered by the Court, would cause Defendant extreme financial hardship and

26  adversely affect all members of the Town community, including disabled persons.

27      F.   Defendant denies each and every allegation advanced by Plaintiff and by entering into

28  this Consent Decree does not admit liability to any of the allegations made by Plaintiff in his

**CONSENT DECREE AND ORDER**
**CASE NO. C08-05407 SBA**                                                    3

Complaint filed in this action.  Plaintiff denies each and every assertion recited by Defendant and does not admit that any of the assertions are correct.  This Consent Decree is not to be construed as an admission of liability by the Town of Corte Madera relating to any allegations in Plaintiff's complaint or as an admission by Plaintiff that Defendant's assertions are correct.  The parties hereby enter into this Consent Decree for the sole purpose of resolving this lawsuit without the need for protracted litigation, and without the admission of any liability.

G.    The parties to this Consent Decree agree that the Court has jurisdiction of this matter pursuant to 28 USC Section 1331 for violations of the ADA, 42 USC 12101 et seq. and pursuant to pendant jurisdiction for violations of California Government Code Sections 4450 et seq., California Government Code Sections 11135 et seq.; California Health and Safety Code Sections 19955ff et seq.; and California Civil Code Sections 54, 54.3, and 55.

H.    The parties have engaged in several mediation sessions and have extensively discussed their respective claims and positions.  Having engaged in this process, the parties represent that they believe settlement under the terms set forth in this Consent Decree and Order constitutes a resolution of this lawsuit which will significantly and substantially improve disabled access for individuals with disabilities within the subject matter areas of this lawsuit on a continuing and ongoing basis, and constitutes the most fair and equitable resolution that the parties can mutually agree upon in this lawsuit.

I.    In order to avoid the costs, expense, and uncertainty of protracted litigation, the parties to this Consent Decree agree to entry of this Order to resolve all claims raised in the Complaint filed with this Court on December 2, 2008.  Accordingly, they agree to the entry of this Order without trial or further adjudication of any issues of fact or law concerning Plaintiff's claims for injunctive relief, damages and attorney fees, litigation expenses, and costs.

WHEREFORE, the parties to this Consent Decree hereby agree and stipulate to the Court's entry of this Consent Order, which provides as follows:

**II    INJUNCTIVE RELIEF**

A. Phase One

In those locations identified in Exhibit "A", the Town of Corte Madera shall perform that

1   work stipulated to by the parties which has been set forth and specifically described in Exhibit "A".

2   The work to be performed pursuant to this section shall be performed within Fiscal Year 2010-

3   2011, and in no event later than June 30, 2011. The work performed pursuant to this section shall

4   be considered the first phase of work the Town is required to perform under this Consent Decree

5   and Order–the "Phase One" work. (Whenever used in this Order "Fiscal Year" shall refer to the

6   period beginning July 1 of the first year referenced and ending June 30 of the second year

7   referenced.)

8          B. Phase Two

9          1. Phase Two shall commence July 1, 2011 and shall continue until the end of the Fiscal

10  Year during which the revenue measure described in Section C (Phase Three) below is voted upon

11  by the Town's electorate.  In no event shall said measure be placed on a ballot for an election

12  occurring after December 31, 2015, and therefore, in no event shall Phase Two extend beyond

13  Fiscal Year 2015-2016.

14         2.  The Town shall use its best efforts to complete and adopt a Barrier Removal

15  Implementation Plan ("BRIP") or a similar plan for implementation of disabled access barrier

16  removal for the items which are within the subject matter areas of this lawsuit for performance of

17  the work under this Agreement during Phase Two and Phase Three; provided, however, that if the

18  Town has not adopted the BRIP by June 30, 2012, by that date the Town shall provide the

19  Plaintiff's attorney its reasons for not having adopted the BRIP, and shall describe the steps

20  necessary to adopt the BRIP and date by which the BRIP shall be adopted which shall be no later

21  than June 30, 2013.  The parties have agreed that the federal and state disabled access construction

22  standards and stipulations set forth in Exhibit "C" (hereafter referred to as "Standards") shall apply

23  to the work performed under this Consent Decree and Order, except as may be specifically set

24  forth in Exhibit "A" or as may be otherwise agreed upon by the parties in writing.  The BRIP shall

25  at a minimum contain physical modifications, improvements, alterations, and/or work in

26  conformance with the Standards existing at the time of the Town Council's approval of the BRIP

27  for the following items (which shall be collectively referred to hereafter as "Items"): 1) Each and

28  all of the following items identified by the Plaintiff's consultant report which are reproduced as

Exhibit "B" to this Order: Item numbers 5-9, 12-13, 17, 19-25, 32, 50-60, and 64-71; 2) Each and all items identified in the 2002 Corte Madera ADA Sidewalks and Street Crossings Survey at Volumes 1-4 (excluding residential driveways serving four (4) or fewer units), with the priority set forth in Chapter 4 of the 2003 Corte Madera ADA Transition Plan to the extent reasonably practicable, both prepared by Gilda Puente Peters Architects; and 3) Each and all on street parking items for Tamalpais Avenue, Corte Madera Avenue, and First Street as set forth in Volume 6 of the Revised 2002 Survey prepared by Gilda Puente Peters Architects.  The BRIP shall be prepared by a disabled access consultant or architect, which also may be a CASp (Certified Access Specialist as defined by California Civil Code Section 55.52), selected by the Town in its sole discretion, and shall be considered, and adopted by the Town Council through a public meeting process allowing members of the public to provide comments on the BRIP during its consideration before the Accessibility Advisory Commission and the Town Council.  In adopting the BRIP and its terms and provisions, the Town shall be entitled to exercise its sole discretion, subject only to the BRIP meeting the Standards and the provisions of this paragraph and any other provisions of this Consent Decree and Order applicable to the BRIP.  Upon adoption of the BRIP, the Town shall commence Work (as defined below) under the BRIP in accordance with the Standards and any other applicable provisions of this Consent Decree and Order.  Fees and costs incurred and paid by the Town to other than Town employees or for materials not provided directly by Town employees for the design, preparation, adoption, and implementation of the BRIP and for performance of the Work (as defined below) (including any design, engineering or consulting services contemplated by Exhibit C) shall be paid for out of the Fund (as defined below) and shall operate to reduce the amount in the Fund available for the Town to perform the work contained in the BRIP as approved (hereafter referred to as "Work"), including but not necessarily limited to those arising out of the use of consultants, attorneys, engineers, architects, contractors, and other design and construction professionals.

3. The Plaintiff's counsel shall be provided with the version of the BRIP being proposed to the Accessibility Advisory Commission for recommendation of approval by the Town Council. The Plaintiff's counsel shall be afforded at least sixty (60) calendar days from date of receipt to

provide comments on the BRIP to the Town Attorney's office.  Thereafter, the BRIP may be submitted to the Town Council for final approval.   The Plaintiff's attorney's fees and costs and any expert or consulting fees and costs incurred for the review and commenting upon of the BRIP shall be charged to and paid by the Fund, to the extent that they do not exceed the maximum allowable under this Consent Decree and Order.  Any amendments or modifications made to the BRIP after its adoption by the Town Council (which may include but need not be limited to those required by changes in the law described by Exhibit "C") or resulting from a feasibility study (as described by Exhibit "C") or as otherwise described by Exhibit "C" after the BRIP has been approved and the approved work has come under question through the design of the work approved under the BRIP shall be subject to the review, comment, and payment procedure of this paragraph and be charged to and paid by the Fund as provided by subsection II(G), to the extent that the maximum allowable as provided by subsection II(G) is not exceeded.

4.  During each of the Fiscal Years occurring during Phase Two, the Town of Corte Madera shall set aside funds ("Fund") to be used for the purposes of providing and maintaining access to persons with disabilities within the subject matter areas of this lawsuit, in accordance with the Standards.  The amount the Town must set aside and allocate to the Fund shall be comprised of the following amounts to be determined by the Town on an annual basis: 1) An amount equal to the greater of $50,000 or 50% of the 2105 and 2106 gas tax funds ("2105" and "2106" shall refer to the specified category of gas tax revenues received by the Town from the State and not the year in which gas tax funds are received by the Town) received by the Town during the immediately preceding Fiscal Year; and 2) An amount no less than 10% of the Town's unrestricted capital improvements expenditures (actually spent), excluding grant fund matches, during the Fiscal Year that is two (2) Fiscal Year periods preceding the Fiscal Year during which the funds are to be spent.  (For example, the Fiscal Year 2011-2012 Fund shall be equal to the amount of gas tax revenues received by the Town in Fiscal Year 2010-2011 plus 10% of the Town's unrestricted capital improvements expenditures (actually spent), excluding grant fund matches in Fiscal Year 2009-2010.)  For each and every year of Phase Two the Town shall utilize the Fund, subject only to the following carryover and crediting provisions (as described below) that may apply during any

given Fiscal Year: 1) Carryover--Any funds not used in any given Fiscal Year(s) shall be carried over into the succeeding Fiscal Year(s). (For example, if the Town is allocated $100,000 during Fiscal Year 2011-2012 and only spends $60,000 during the same Fiscal Year period, the Town shall allocate the remaining $40,000 to the expenditures in the Fund for the 2012-2013 Fiscal Year. If the Town is also allocated $100,000 during Fiscal Year 2012-2013, then it could spend some or all of the $40,000 carried over from Fiscal Year 2011-2012 in addition to the $100,000 during Fiscal Year 2012-2013 and any remaining portion of the $40,000 shall be carried over to Fiscal Year 2013-2014 and so on.); 2) Crediting--Any expenditure(s) that exceed the amount of money in the Fund in a given Fiscal Year(s) will be credited in the succeeding Fiscal Year(s). (For example, if the Town is allocated $100,000 during Fiscal Year 2011-2012 and the Town spends $160,000 during the same Fiscal Year period, the Town may credit its obligation during Fiscal Year 2012-2013 by the $60,000.  If the Town's obligation were also $100,000 during Fiscal Year 2012-2013, then the Town could spend $40,000 during Fiscal Year 2012-2013 and meet its obligations for that same Fiscal Year.)  The Town's funding obligation during Phase Two shall be limited to the total amount of the Fund when the amount allocable to each Fiscal Year of Phase Two is aggregated.  In the event that the Fund has a surplus amount at the end of Phase Two, the surplus shall be added to the Phase Three Revenue Measure Fund (described by Section C below) or if the Measure does not pass, to the Fund for remaining work (described by Section D below).  In the event that the Fund has a deficit amount at the end of Phase Two, the deficit shall be charged to funds from the Revenue Measure (described by Section C below) or to the funding to complete remaining work (described by Section D below), whichever is applicable.

C.  Phase Three Revenue Measure Fund

1.  In an election for national, state and/or local office to occur during the period extending from the 2011 calendar year to the end of the 2015 calendar year (which timing shall be at the sole discretion of the Defendant), the Defendant shall propose to the voters a revenue measure which shall raise specific funds through a taxation or assessment measure for the purpose of funding of the Work and assisting the Town to comply with the injunctive relief terms of this Order ("Revenue Measure").  The Revenue Measure shall be formulated to raise no less than $3,000,000

and no more than $4,000,000 in total for the Work which is the subject of this Consent Decree and Order (inclusive of consultant, attorney, and other related costs in preparing, formulating, processing, polling, and financing the preparation and implementation of, the Revenue Measure) which said tax or assessment shall be levied for no more than a maximum period of ten (10) years for the Work to be performed during the ten (10) year period and within a reasonable period of time of the end of this ten-year period, but in any event no later than within the three (3) years following this ten-year period pursuant to this Consent Decree and Order.  The Town shall use its best efforts to formulate the Revenue Measure to raise no less than $3,000,000.  Provided that the Town complies with this paragraph, the outcome of the Revenue Measure raising less than the amount required by this section shall not constitute a violation of this Consent Decree and Order. The Revenue Measure may include funding for other work or purposes not subject to this Order, provided that the provisions of this paragraph are complied with.  In the event that the Revenue Measure includes funding for other work or purposes that are not included within the Work, only that percentage of the costs in preparing, formulating, and financing the preparation of the entire Revenue Measure that equals the percentage of the total revenues that are to be allocated to the injunctive relief terms of this Order shall be charged to the revenues generated to perform the injunctive relief terms of this Order. (For example, if 60% of the revenues to be generated under the Revenue Measure are to perform the injunctive relief terms of this Order then only 60% of the costs of the Revenue Measure (as described within this paragraph) shall be chargeable to the revenues generated by the Revenue Measure.)

      2.    The Plaintiff's counsel shall be provided with a draft of the Revenue Measure prior to it being submitted in final form to the County elections official.  The Plaintiff's counsel shall be afforded at least thirty (30) calendar days to provide comments on the draft Revenue Measure to the Town Attorney's office.  Thereafter, the final Revenue Measure may be placed on an election ballot for approval by the voters.  The Plaintiff's attorney's fees and any expert or consulting fees for the review and commenting upon of the draft Revenue Measure shall be charged to and paid by the Fund pursuant to subsection II(G), to the extent that the maximum allowable under this Consent Decree and Order is not exceeded.

3.    If the Revenue Measure is passed by the voters, this Order shall terminate upon the termination of the period of funding and completion of the Work to be performed under the Revenue Measure, whichever is later, in accordance with Subsection II(H).

4.    If the Revenue Measure fails to be passed by the voters, the Defendant shall have no obligation to propose another revenue measure and the provisions of the following section shall be applicable to funding that portion of the Work that is remaining at the end of the Fiscal Year period during which the Revenue Measure is defeated.

D.    Phase Three Funding for Remaining Work (If Revenue Measure Does Not Pass)

If the Revenue Measure fails to be passed by the voters, the Plaintiff shall have the option of the following alternative funding methods:

1.    The Plaintiff may choose to require Defendant to continue funding at the same level as the Fund (as calculated by applying the same formula described by Section (B)(4) above to the applicable Fiscal Year) beginning the first Fiscal Year following the defeat of the Revenue Measure and continuing for the following fifteen (15) Fiscal Years.  If there are funds remaining after the fifteenth fiscal year period, then this Order shall terminate upon the expenditure of the remaining funds.  The Fund shall be utilized for performance of the Work during this time period. If the Plaintiff selects this option, this Order shall terminate at the end of the last day of the fifteenth Fiscal Year period (or upon the expenditure of all remaining funds as provided above), whichever is later, in accordance with subsection II(H).

2.    The Plaintiff may choose to meet and confer with the Town on the following specific matters: 1) the sources and level of funding in the Town's Budget to be allocated and used for the remaining Work; and 2) the time period for the funding to be allocated and used for the remaining Work based upon the sources and level of funding in the Town's Budget (hereafter collectively referred to as "Meet and Confer Matters"). The sources and level of funding shall refer to any revenues received by the Town that legally may be used for any purpose that could include the remaining Work.

If the parties cannot reach agreement on the Meet and Confer Matters, then the parties shall submit the Meet and confer Matters to binding arbitration.  The arbitrator shall be selected through

1  the parties' mutual agreement.  If the parties cannot agree on an arbitrator, then the parties shall

2  select an arbitration organization, such as the American Arbitration Association, JAMS, or some

3  other similar organization.  The organization shall provide a list of names to both parties.  If both

4  parties select any of the same arbitrators, then the organization shall randomly select an arbitrator

5  selected by both parties.  If the parties do not both select any arbitrator, then the organization will

6  submit an odd-numbered list (no less than 9) of potential arbitrators to the parties.  Each party shall

7  alternate by striking one name from the list for as many rounds as necessary until one name

8  remains.  The arbitration organization shall decide by a random process (such as a coin flip) which

9  party shall have the first turn in striking a name from the list.  The last remaining name shall be the

10  arbitrator selected by the parties. The arbitrator shall render a decision on the Meet and Confer

11  Matters which shall be binding upon both parties and not subject to judicial review.  The

12  arbitrator's decision may not modify any terms of this Order, except as specifically provided by

13  this subsection (D)(2).  The arbitrator may in his/her discretion award attorney's fees, expert

14  consultant fees, and costs to the Plaintiff if the arbitrator determines that the Plaintiff is the

15  prevailing party in the arbitration proceeding.  Defendant shall not be entitled to attorney's fees

16  and/or expert consultant fees and costs incurred by the Defendant even if the arbitrator determines

17  that the Defendant is the prevailing party in the arbitration proceeding.  An award of fees and costs,

18  which can only be made to the Plaintiff, shall be paid for by the Fund to do the remaining Work.

19  The fees to be paid to the arbitration organization for all costs associated with the arbitration

20  proceeding shall also be paid for by the Fund to do the remaining Work.

21        E.    Grants and Additional Funding Sources

22        The Town shall make good faith and reasonable efforts to seek additional funding,

23  including but not necessarily limited to grant funding for disabled access improvements,

24  alterations, modifications or new construction within the subject matter areas of this lawsuit, on a

25  continuing basis upon this Order taking effect.  The Town may retain consultants to perform the

26  obligations of this paragraph, which costs incurred by the Town shall be charged to the Fund,

27  Revenue Measure, or the funding to perform the remaining Work determined by the arbitrator,

28  whichever is applicable.

1    F.    Annual Report

2        Within one hundred twenty (120) days of the end of each Fiscal Year (beginning FY 2010-

3    2011), the Town shall provide Plaintiff's counsel an annual report of the preceding Fiscal Year

4    describing: 1) that portion of the Work completed during the applicable Fiscal Year; 2) the funding

5    expended for performance of the injunctive relief items during the applicable Fiscal Year; and 3)

6    any grants or other additional funding sources applied for by the Town in accordance with

7    subsection E above and the result of such applications.

8        G.    Plaintiff's Attorney's and Consultant's Fees and Costs

9        Any fees or costs incurred by Plaintiff's attorney and consultants, including but not limited

10   to disabled access consultants, engineers, contractors, and/or architects, on any matters specifically

11   provided for within Sections B(3), C(2), D(2), F, and H(1)(A) shall be paid for out of the Fund,

12   Revenue Measure Fund, or the Phase Three funding, whichever is applicable. Notwithstanding any

13   of the above, the maximum amount that may be paid for fees and costs under this paragraph shall

14   be $200,000 in total and shall be limited to the funds in the Fund, Revenue Measure Fund, or the

15   Phase Three funding, whichever is/are applicable.  Any portion of fees and costs that exceed the

16   amount in the Fund during the applicable Fiscal Year shall be subject to the crediting provisions

17   stated in Section II(B)(4); provided that the total aggregate amount of $200,000 for Sections B(3),

18   C(2), D(2),  F and H(1)(A) combined shall not be exceeded. The Defendant shall have no

19   obligation to pay any amount of fees and costs under any or all of Sections B(3), C(2), D(2), F, and

20   H(1)(A)  in excess of the aggregate amount of $200,000 under this Consent Decree and Order.

21       H.    Term, Termination, and Court Retention of Jurisdiction

22       This Order shall continue in full force and effect for as long as it shall not be terminated

23   pursuant to any of the following:

24       1) The termination of the Consent Decree and Order under any of the terms of the Consent

25   Decree and Order:

26       (A) which termination is agreed upon between the parties through the following

27   procedures: The Defendant shall provide notice in writing to the Plaintiff's attorney stating that the

28   Consent Decree and Order has expired on its own terms and identifying the section and subsection

and summary of facts that constitute its grounds for this position.  The Plaintiff's attorney shall have sixty (60) days from date of service of notice to respond as to its agreement with the Defendant or its grounds for its position that the Consent Decree and Order has not expired on its own terms (including the section and subsection of the Consent Decree and Order that is being relied upon).  If the Plaintiff and Defendant agree that the Consent Decree and Order has expired on its own terms, then the parties shall submit a Stipulation and Proposed Order including the date that the Consent Decree and Order expired; or

(B) which termination is not agreed upon but is ordered by the Court under the following circumstances: If the Plaintiff fails to respond to the Defendant's notice under subsection (A) above  in a timely manner, then the Defendant shall submit an Application, Declaration, and Proposed Order to the Court stating its grounds for termination and serve its Application, Declaration and Proposed Order on the Plaintiff's attorney.  Plaintiff shall have thirty (30) days to submit its opposition, if any, to the Application.  No hearing shall be required on the Defendant's application unless requested by the Court; or

2) By an order issued by the Court following the procedures described by this section:  If the parties do not agree that the Consent Decree and Order has expired on one or more of the terms of this Consent Decree and Order, or the Defendant believes that the Consent Decree and Order should be terminated prior to the applicable expiration period on the grounds that the Work has been completed, a noticed petition or noticed motion shall be filed with the Court.  The Court shall make a determination and order on the noticed petition or noticed motion;

3) or as may otherwise be terminated by an order issued by the Court.

The Court shall retain continuing jurisdiction over, and to enforce, this Consent Decree and Order during its term and for an additional one (1) year period after the date of the Court's entry of its order terminating this Consent Decree and Order**.**

## III.   DAMAGES, ATTORNEY FEES, LITIGATION EXPENSES AND COSTS

A. The parties have reached an agreement regarding plaintiff's claim for damages (including but not limited to alleged physical injuries), and claim for plaintiff's statutory attorneys' fees, expert fees, litigation expenses and costs.  Defendant shall pay a total of $225,000 in full and

1  final resolution of all plaintiff's and plaintiff's attorneys' claims of a monetary nature being made

2  in this lawsuit as follows: $25,000 for damages and $200,000 for statutory attorney's fees, expert

3  fees, litigation expenses and costs; provided, however, that this monetary settlement does not

4  include any attorney's fees, litigation expenses and costs payable hereafter as required by Section

5  II(G), or incurred for or in connection with any petition, motion, or other action seeking

6  enforcement of this Consent Decree and Order, or incurred for or in connection with Section

7  II(H)(1)(B), II(H)(2) and II(H)(3), for which Plaintiff may claim entitlement and for which

8  Defendant may claim that Plaintiff is not so entitled.  In this regard, Defendant reserves the right to

9  oppose any such claim by Plaintiff and does not waive any rights that it may otherwise have to

10  oppose any such claim.  Plaintiff represents and warrants that he sought and received no medical

11  treatment (including physician or hospital visits, x-rays, physical therapy, or any other form of

12  medical attention of any kind whatsoever) for any of his alleged injuries.  Accordingly, Plaintiff

13  further represents and warrants that to the best of his knowledge there are no valid liens, valid

14  claims of lien, or valid assignments in equity of any kind or character which should ever be

15  asserted by any lien claimant or creditor of Plaintiff, including, but not limited to any private

16  insurer, Medi-Cal, or Medicare, arising out of, related to, or connected with the Plaintiff's alleged

17  physical injures.  To the extent, however, that any valid liens, valid claims of lien, or valid

18  assignments in law or equity are asserted by any third party to this Action, Plaintiff agrees to

19  satisfy them through the damages proceeds of this settlement.  Plaintiff specifically agrees to

20  indemnify, defend, and hold harmless Defendant for any such claims that are asserted by any third

21  party to this Agreement (including Medicare liens) for any warranty made by Plaintiff under this

22  paragraph.

23       B.   Payment shall be delivered to Plaintiff's counsel at 427 Grand Avenue, Oakland, CA

24  94611 within 5 business days of notice to Defendant by email from the court or plaintiff's attorney,

25  or otherwise, of the entry of this order, in the form of a check in the amount of $25,000 made

26  payable to "Sidney J. Cohen, Professional Corporation, in trust for RICHARD SKAFF" for

27  damages and a check in the amount of $200,000 made payable to "Sidney J. Cohen, Professional

28  Corporation" for statutory attorneys' fees, expert fees, litigation expenses, and costs.

**IV.   ENTIRE AND BINDING CONSENT DECREE AND ORDER**

A.    This Consent Decree and Order and its exhibits, and any appendices attached, constitutes the entire agreement between the parties, and no other statement, promise or agreement, either written or oral, made by any of the parties or agents of any of the parties, that is not contained in this written Consent Decree and Order, shall be enforceable regarding the matters herein.

B.    This Consent Decree and Order shall be binding on Plaintiff, Richard Skaff; Defendant, the Town of Corte Madera; and any successors in interest.  The parties have a duty to so notify all such successors in interest of the existence and terms of this Consent Decree and Order during the period of the Court's jurisdiction of this Consent Decree and Order.

**V.   RELEASE AND WAIVER**

A.    Except for all obligations of Defendant in this Consent Decree and Order and subject to the exclusion set forth by Subsection (E) below, Plaintiff, RICHARD SKAFF, on behalf of his respective agents, representatives, predecessors, successors, heirs, partners and assigns, releases and forever discharges the Defendant TOWN OF CORTE MADERA and all its officers, employees, agents, attorneys, insurance carriers, heirs, predecessors, and representatives, from all claims, demands, actions, and causes of action of whatever kind or nature, presently known or unknown, made, arising out of or in any way connected with curbs, sidewalks, walkways, paths of travel, parking, and related facilities located within the Defendant's public rights-of-way and on property owned by the Defendant throughout the Town of Corte Madera, including but not limited to any and all of the following categories which are each intended to be illustrative rather than all-inclusive: 1) any and all such claims made in the subject matter areas of this lawsuit; 2) any and all such claims that were not made in the subject matter areas of this lawsuit but could have been made in the subject matter areas of this lawsuit; 3) any and all such claims, causes, incidents, acts, or other matters alleged in the subject matter areas of this lawsuit by the Plaintiff's complaint; 4) any and all such claims, causes, acts, incidents, or other matters included within Recitals A, B, and C of this Consent Decree and Order for the subject matter areas of this lawsuit; 5) any and all such claims arising out of any and all incidents in which Plaintiff encountered or could have

encountered barriers to physical access in the subject matter areas of this lawsuit due to his

physical disabilities at any and all locations within the subject matter areas of this lawsuit that

occurred or could have occurred in the subject matter areas of this lawsuit at any time prior to the

termination of this Consent Decree and Order, excluding incidents arising out of any barriers that

did not exist on or before the date of entry of this Consent Decree and Order.

B.     Plaintiff understands and agrees that there is a risk and possibility that, subsequent to

the execution of this Consent Decree and Order, any or all of them will incur, suffer, or experience

some further loss or damage with respect to this lawsuit which are unknown or unanticipated at the

time this Consent Decree and Order is signed.  Except for all obligations required in this Consent

Decree and Order, the Plaintiff intends that this Consent Decree and Order apply to all such further

loss with respect to this lawsuit.  Therefore, except for all obligations of Defendant in this Consent

Decree and Order, this Consent Decree and Order shall apply to and cover any and all claims,

demands, actions and causes of action with respect to this lawsuit, whether the same are known,

unknown or hereafter discovered or ascertained, and the provisions of Section 1542 of the

California Civil Code are hereby expressly waived.  Section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN
> BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER
> SETTLEMENT WITH THE DEBTOR.

C.     Plaintiff represents and warrants that there are no liens or claim of lien, or assignment

in law or equity, or otherwise, of or against the claim, or cause of action of the plaintiff, and that

plaintiff is fully entitled to give this complete release and discharge.

D.     Nothing in this Release and Waiver shall operate to limit, nullify, restrict, alter, or

otherwise affect in any way either party's rights of collateral estoppel and/or res judicata as it may

be applied to any subsequent court proceeding.

E.     Notwithstanding any of the above, the parties agree that the provisions of subsections

(A)-(D) above shall not apply with respect to parking on the site of Town-owned property (with

the exception of parking located within any public right-of-way, within the Recreation Center

Parking Lot, and in Old Corte Madera Square).  With respect to parking that is subject to this

1 subsection (E) and thus not included within this Release and Waiver, the parties agree that the

2 following shall apply: Plaintiff shall not make, or encourage, or aid others in making, a complaint,

3 grievance, or inquiry with any state, federal, or other local governmental agency or body or file a

4 governmental claim (including a claim for damages against the Town), lawsuit, legal proceeding,

5 or other form of challenge without first complying with the following steps: Plaintiff shall notify

6 Town of the barrier(s) that is the subject of the complaint or grievance, the specific regulation that

7 Plaintiff believes is being violated by the existence of the barrier, and provide the Town no less

8 than ninety (90) calendar days to resolve the complaint or grievance by either: 1) correcting the

9 alleged violation; or 2) entering into an agreed upon final disposition of the complaint or grievance

10 with the Plaintiff.

11 **VI.    INTERPRETATION**

12        The language of this Consent Order will be construed as a whole according to its fair

13 meaning, and not strictly for or against any of the Parties.  The headings in this Consent Order are

14 solely for convenience and will not be considered in its interpretation.  Where required by context,

15 the plural includes the singular and the singular includes the plural.  This Consent Order is the

16 product of negotiation and joint drafting so that any ambiguity will not be construed against any

17 Party.

18 **VII.    SEVERABILITY**

19        If any term of this Consent Order is determined by any court to be unenforceable, the other

20 terms of this Consent Order shall nonetheless remain in full force and effect.

21 **VIII.    COUNTERPARTS**

22        This Consent Order may be executed in counterparts, each of which will be considered an

23 original, but all of which, when taken together, will constitute one and the same instrument.

24 **IX    NOTICES**

25        Any Notice required or permitted to be given shall be made by delivery, e-mail, or

26 facsimile transmission to the parties' counsel, as follows:

27        To Plaintiff:    Sidney J. Cohen
                    Sidney J. Cohen Professional Corporation

28                          427 Grand Avenue

Oakland, CA 94610
Fax: (510) 893-9450
E Mail: sjc5143@aol.com

/ / /                                                    / / /

To Defendant:  Jeffrey A. Walter
John A. Abaci
Walter & Pistole
670 W. Napa Street, Suite F
Sonoma, CA 95476
Fax: (707) 996-9603
E Mail: jwalter@walterpistole.com

Dated: 7/5             , 2010                 _____/S/_____
                                              Plaintiff, RICHARD SKAFF

Dated: 7/6             , 2010                 _____/S/_____
                                              CARLA CONDON, Mayor for
                                              Defendant, TOWN OF CORTE MADERA

APPROVED AS TO FORM:

                                              SIDNEY J. COHEN PROFESSIONAL
                                              CORPORATION

                                              By:_____/S/_____
Dated: 7/5             , 2010                 SIDNEY J. COHEN, Attorney for Plaintiff,
                                              RICHARD SKAFF

                                              WALTER & PISTOLE

Dated: 7/6             , 2010
                                              By:_____/S/_____
                                              JOHN A. ABACI, Attorneys for Defendant,
                                              TOWN OF CORTE MADERA

## ORDER

The Court finds the parties have shown good cause for entry of this Order in accordance with the stipulation of the parties.

IT IS SO ORDERED.

*Saundra B Armstrong*

**CONSENT DECREE AND ORDER**
**CASE NO. C08-05407 SBA**                                                     18

Dated: <u>7/21/10</u>

_____

SAUNDRA BROWN ARMSTRONG
UNITED STATES DISTRICT JUDGE
